UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Criminal No. 2:02-CR-91-5 |
| | ) | |
| | ) | |
| GERARD BLANCHARD | ) | |

**OPPOSITION OF THE UNITED STATES TO DEFENDANT BLANCHARD'S**
**MOTION TO DISMISS FOR EGREGIOUS VIOLATION OF DUE PROCESS ETC.**

The United States of America, by and through its attorney, Tristram J. Coffin, United

States Attorney for the District of Vermont, hereby submits its Opposition to Defendant

Blanchard's Motion to Dismiss, Without Prejudice, for Egregious Violation of Due Process,

Violation of International Law, and Unlawful Attainment of Jurisdiction Over His Person,

Request for an Evidentiary Hearing and an Order that He Be Returned to Canada.  For the

reasons that follow, Defendant's motion should be denied in full.

I.  INTRODUCTION

Defendant Blanchard contends that the indictment charging him with membership in an

extensive conspiracy to distribute over 1,000 kilograms of marijuana and to launder millions of

dollars of drug proceeds should be dismissed because his presence in this Court was procured

through his abduction by the United States government.  This claim is so baseless and removed

from the facts surrounding Blanchard's presence in the United States as to border on the absurd.

However, even if Blanchard were abducted – which he patently was not – more than a century of

Supreme Court precedent flatly refutes his claim that the indictment against him be should be

dismissed.  *See, e.g., United States v. Alvarez-Machain*, 504 U.S. 655 (1992) (holding that even

the forcible kidnaping by DEA agents of a Mexican national from Mexico in violation of

international law is not a basis to dismiss the indictment).

## II.  FACTUAL BACKGROUND

The facts surrounding Blanchard's arrest in the United States are set forth below.  The

government would establish these facts at a hearing, if necessary, although there is ample

authority for the proposition that no hearing is justified in this case.

Gerard Blanchard was a member of the Cusson marijuana smuggling ring that was the

subject of a coordinated investigation by United States and Canadian authorities from 2001 until

a series of arrests in the case occurred in Canada in 2002.  Blanchard was one of eighteen

Canadian defendants named in a Superseding Indictment in the United States.[1]  The United

States alleges that Blanchard was one of Cusson's primary marijuana suppliers.  Law

enforcement in the United States and Canada understand Blanchard to be the brother-in-law of a

full-patch member of the Hells Angels, Michel "Sky" Langlois.  Langlois is reputed to have been

one of the founding members of the Montreal South chapter of the Hells Angels, and a former

president of the Hells Angels of Canada. Evidence against Blanchard includes wiretap

communications regarding the drug and money conspiracy, as well as witness testimony.  Over

thirty individuals have been convicted, both in the United States and Canada, for their

involvement in the Cusson marijuana smuggling scheme.  There have been no acquittals.

Blanchard is viewed by the United States as among the most culpable individuals involved in the

drug and money smuggling conspiracy.

Blanchard pled guilty in Canada to charges relating to his participation in this criminal

---

[1]Numerous other members of this ring were prosecuted in this district and other districts.

2

enterprise.  Although the United States does not know at this point precisely how much time Blanchard served in prison on the Canadian charges, the defendant asserts in his motion that he was sentenced to 30 months after paying a $75,000 fine.  Defendants in Canada typically serve only about one-sixth of their sentence in actual confinement.

The United States sought extradition, but Canada declined to surrender Blanchard to the United States.  Although no reasons were given (nor are they typically), a Canadian Supreme Court decision, *Catroni v. United States,* requires the extradition decision-maker to balance the right of a Canadian citizen to remain in Canada under the Canadian Charter of Rights and Freedoms against Canada's obligations under its extradition treaties with the United States and other countries.[2]  Although Canada declined to surrender Blanchard for extradition, the indictment in Vermont remained pending.  A fugitive arrest warrant that had previously been submitted to the United States Marshal Service remained on file and posted on NCIC, and was available to law enforcement in other automated criminal information databases.

On or about December 12, 2010, United States Customs and Border Protection informed Mexican immigration authorities that Blanchard, a fugitive with an outstanding arrest warrant from the United States, had boarded a commercial flight in Toronto, Canada destined for Mexico.  This flight would travel through United States airspace.  After the flight landed, Mexican immigration authorities called the United States Marshal Service's legal attache in Mexico City, Deputy Marshal Melesio Hernandez, and informed him that Blanchard had arrived in Mexico and that Mexican immigration was going to exclude him from admission to Mexico.

_____

[2]Needless to say, there appears to be no equivalent right under the Canadian Charter of Rights and Freedoms for a Canadian citizen to remain in Mexico.

3

Deputy Hernandez confirmed that Blanchard was the subject of an outstanding arrest warrant and was wanted by the United States.  Deputy Hernandez would testify that this sharing of information is essentially standard procedure,[3] and is a measure of comity between the United States and Mexico – neighbors who are working closely to address significant law enforcement challenges, widespread violence and civil unrest in Mexico and along the southwestern border. This criminal violence and social upheaval stems from drug trafficking and, significantly, from marijuana trafficking.

Decisions regarding Blanchard's admission to or removal from Mexico were made solely by the government of Mexico without additional involvement of United States officials.  As legal attache, Deputy Hernandez understands that Mexican immigration law has an exclusion of admissibility for persons who are international fugitives.  Accordingly, in keeping with common practice, the United States informed Mexican immigration officials of the arrival of this fugitive, and provided them with a photograph of Blanchard and a copy of the arrest warrant.

Although Hernandez was not involved in any decision about Blanchard made by Mexican immigration officials, he knows it is common (although not automatic) for fugitives from foreign countries to be denied entry to Mexico and excluded.[4]  Excluded fugitives typically are boarded on flights for return to their home countries.  In this case, Blanchard was placed on a flight that was not direct to Canada.  Blanchard traveled with Mexican immigration agent Miguel

---

[3]The legal attache for the U.S. Marshal Service responds to 10 to 15 calls a day from Mexican immigration authorities regarding persons entering Mexico with warrants outstanding from the United States.

[4]The Court can envision rational policy decisions by a sovereign nation not to admit within its borders persons who are fugitives from drug trafficking charges in other countries or who carry with them prior convictions of charges involving drug smuggling.

4

Angel Ruiz.  The plane made a scheduled stop in Los Angeles, California before continuing on to Toronto.  Upon arrival inj Los Angeles, Blanchard was taken to secondary immigration inspection and subsequently arrested by Deputy Marshals and ICE agents.  U.S. authorities had been notified by Mexican authorities of Blanchard's presence on the flight landing in Los Angeles.[5]

Blanchard asserts that, while in the custody of Mexican authorities, he was denied the ability to contact anyone, including the Canadian embassy whom he says he requested to call. He also says that he slept on the floor for two nights while awaiting removal from Mexico.

III. DISCUSSION

    A.  Dismissal of the Indictment is Not a Remedy

        1.  Supreme Court Authority Finds No Due Process Violation Even For Forcible Abductions

This case is controlled by longstanding Supreme Court authority squarely rejecting the remedy Blanchard seeks even in situations of forcible abduction.  In *United States v. Alvarez-Machain*, 504 U.S. 655 (1992), the Supreme Court held that the forcible abduction of a Mexican national -- expressly directed by the DEA, which was the subject of official protest by Mexico and was in apparent violation of international law -- did not justify dismissal of the indictment against the abducted defendant.  *Alvarez-Machain* relied on, and reaffirmed, the longstanding doctrine articulated in the leading case in this area, *Ker v. Illinois*, 119 U.S. 436 (1886).  In *Ker*,

---

[5]No one in Vermont was aware of the circumstances of Blanchard's arrest until long after it had occurred.  Indeed, the U.S. Attorney's Office and DEA first learned that Blanchard had arrived in Los Angeles from Mexico from the bail report prepared by the U.S. Probation Officer in Los Angeles which was provided on the date of Blanchard's first appearance in Vermont. Prior to that, we believed Blanchard had flown to Los Angeles on a commercial flight from Canada.

the Supreme Court refused to dismiss an indictment when a defendant's presence before a

United States court was procured through his forcible abduction from Peru, rather than by resort

to the extradition treaty between the United States and Peru.  Similarly, in another leading case,

*Frisbie v. Collins*, 342 U.S. 519 (1952), the Supreme Court upheld the conviction of a defendant

abducted in Chicago and brought to Michigan to stand trial in a court of a different jurisdiction.

As the Supreme Court stated in *Frisbie*:

> This Court has never departed from the rule announced in [*Ker*] that the power of a
> court to try a person for crime is not impaired by the fact that he had been brought within
> the court's jurisdiction by reason of a 'forcible abduction.'  No persuasive reasons are
> now presented to justify overruling this line of cases.  They rest upon on the sound basis
> that due process of law is satisfied when one present in court is convicted of crime after
> having been fairly apprized of the charges against him and after a fair trial in accordance
> with constitutional procedural safeguards.  There is nothing in the Constitution that
> requires a court to permit a guilty person rightfully convicted to escape justice because he
> was brought to trial against his will.

*Id.* at 522 (footnote and internal citations omitted).

*Alvarez-Machain* expressly restated this long-held principle of constitutional law.

*Alvarez-Machain*, 504 U.S. at 661-62.  *See also, e.g., United States v. Umeh*, 2011 WL 9397 at

*1-*5 (S.D.N.Y 2011)(in a thorough opinion by Judge Rakoff, the district court finds that

(strongly disputed) allegations of torture, brutal and inhumane treatment by law enforcement

including a DEA agent, and alleged abduction from Liberia to the United States in violation of

international law, even if accepted as true, would not sustain a due process violation warranting

dismissal of the indictment, citing *Alvarez-Machain, Ker* and *Frisbie*, and collecting similar

cases).

6

2.  <u>Applying the Law to the Facts of this Case</u>

When one applies these legal principles to the facts of this case, it is obvious the Court should deny defendant's motion.  First, it cannot be said that there is any evidence that Blanchard was forcibly abducted by United States authorities or others acting on their behalf.  It is the essence of sovereignty for a nation to control its borders and admission to its interior. Blanchard has proffered absolutely nothing that would contradict Deputy Hernandez's assertion that Blanchard was removed from Mexico by the independent decision-making of Mexican authorities.  While Blanchard's motion contains a good deal of loose language about being abducted and forcibly removed from Mexico, there is nothing specifically alleged that counters the assertions of Deputy Hernandez that Mexican – not United States – authorities made the decisions regarding Blanchard's exclusion from Mexico and removal to the United States. Particularly given the drug wars that are raging in Mexico, it should hardly be surprising that Mexican immigration officials made an independent decision to deny admission to a convicted marijuana trafficker who also was the subject of an arrest warrant in the United States for large scale drug trafficking and money laundering.

Nor is there anything surprising or nefarious about Mexico removing Blanchard in a manner that permitted the United States to effect an arrest in its jurisdiction.  It would seem that such decisions regarding an inadmissible alien are justifiable policy calls for a sovereign nation to make.  Again, despite a good deal of nonspecific general allegations of denial of due process, Blanchard has not alleged how any substantive rights of his under Mexican, United States or even Canadian law were violated by Mexican authorities in denying him admission to Mexico and in removing him in a manner that went through the United States.  It should be noted that no

protest has been received by this Office or the Justice Department over this matter.[6]  Moreover,

Blanchard could have avoided this disappointing (to him) action of Mexican immigration

officials simply by not travelling to that country.

Perhaps more importantly,  while defendant has not presented a specific, colorable claim

that any legal right of his was violated, even if he could make such a showing, the rule of *Ker-*

*Frisbie* is that dismissal of the indictment is not an appropriate remedy for violations of

international law – even those much more egregious than alleged here (sleeping on the floor for

two nights, being removed from Mexico on a flight that traveled through the United States).  As

the *Umeh* court held, "even assuming *arguendo* that [defendant's] removal violated various laws

and treaties and thus was the equivalent of an illegal forcible abduction, the Supreme Court has

flatly held that 'the power of a court to try a person for [a] crime is not impaired by the fact that

he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'". *Umeh*,

2011 WL 9397 at *2 (citing and quoting *Frisbie,* 342 U.S. at 522 and *Ker*, 119 U.S. at 444).  *See*

*also*, *United States v. Best*, 304 F.3d 308, 314 (3rd Cir. 2002) (a defendant cannot rely upon a

mere violation of international law as a defense to the trial court's jurisdiction).

### 3. Toscanino Does Not Affect the Result

Defendant relies to a great extent on the discredited and distinguishable case of *United*

*States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974).  This decision has no effect on the result in this

---

[6]Even if such a diplomatic protest were received, it is doubtful this would provide a basis for providing the relief Blanchard seeks.  *See Alvarez-Machain*, 504 U.S. at 658, 662-63 (indictment not dismissed even though forcible abduction of Mexican citizen from Mexico was met with an official protest from the government of Mexico regarding a violation of the extradition treaty).  *See also e.g. United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) (government's failure to notify consular authorities in apparent violation of the Vienna convention creates no judicially enforceable individual rights).

case.  Toscanino sought dismissal of his indictment,  asserting that he was tortured and endured other brutal treatment in Uruguay over seventeen days, with the direct involvement of United States agents, and then was illegally abducted and brought to the United States for prosecution. The Second Circuit opined that the *Ker-Frisbie* doctrine had been weakened, and that a court might someday be presented with a situation so "outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 273 (internal quotations omitted).  The panel remanded the case to the district court to determine whether the defendant could offer credible evidence in support of his allegations of shocking, outrageous conduct.  *Id.* at 281.

The reasons *Toscanino* has no effect on this motion are twofold:  First, it is no longer good law, if it ever was.  The Second Circuit backtracked on *Toscanino* almost as soon as it was decided.  In *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975),  the court of appeals again considered a case in which a defendant had been brought before the trial court by abduction, but in that instance the allegations did not include torture or other brutal treatment. The Second Circuit narrowed the holding in *Toscanino*, holding that it applied only where the defendant could prove "torture, brutality and similar outrageous conduct."  *Id.* at 65.  There was no due process violation when the defendant could only show that he or she had been abducted. *Id.* at 65-66.

More importantly, the prognostication of *Toscanino* that the *Ker-Frisbie* doctrine was in decline has proven off the mark.  The Supreme Court has consistently reaffirmed the principles of that doctrine, most recently in *Alvarez-Machain, supra.  See also, e.g.,  INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984) (the body of a defendant is not suppressible as an

illegal fruit); *United States v. Crews*, 445 U.S. 463, 474 (1980) (same); *Stone v. Powell*, 428 U.S. 465, 485 (1976) ("judicial proceedings need not abate when the defendant's person is unconstitutionally seized.").

In light of these authorities, courts have pretty much uniformly viewed *Toscanino* as a "dead letter."  *Umeh*, 2011 WL 9397 at *4 (collecting circuit cases questioning the continued validity of *Toscanino*).

Second, even if *Toscanino* were still deemed good law, Blanchard's facts are vastly distinguishable.  In *Toscanino*, the defendant alleged that he was beaten brutally and tortured for seventeen days at the explicit direction of the United States government, then kidnaped and brought to the United States.  Here, we have no such facts that "shock the conscience." *Toscanino*, 500 F.2d at 273.  As described above, the most "shocking" conduct was that accommodations in Mexican immigration detention required defendant to sleep on the floor for two nights.  Even accepting this allegation as true, there is no allegation of any involvement of the United States in directing this conduct, nor can it be said to be shocking or outrageous, even if it were deemed  inhospitable or undesirable.

B.  There is No Need For an Evidentiary Hearing

Finally, there is no need for an evidentiary hearing in this case.  Blanchard has made no allegation of any specific legal right that has been violated by Mexico or the United States. Certainly, given the *Ker-Frisbie* doctrine and the Supreme Court authorities most recently enunciated in *Alvarez-Machain*, even if the Court accepts his allegations as true, there is no basis for dismissing the indictment.  Blanchard has made no allegation of torture or other outrageous treatment.  He has offered no proof that the United States orchestrated anything other than

informing Mexican authorities of his arrival in Mexico and bringing the existence of the

outstanding warrant for his arrest to their attention.  Any deficiencies in the legal proceedings

relating to Blanchard's removal from Mexico – and Blanchard has not pointed to any – are

immaterial to this Court's power to try Blanchard on this indictment.  *United States v. Lira*, 515

F.2d 68, 72 (2d Cir. 1975) ("The United States Government did not owe appellant any obligation

to enforce his asserted right under Chilean law."); *Umeh*, 2011 WL 9397 at \*4 ("[t]he United

States is not responsible for ensuring that a foreign sovereign complies with its internal laws in

issuing an extradition or expulsion."); *United States v. Slainas Doria*, 2008 WL 4684229, at \*4

(S.D.N.Y. 2008) ("charges against a defendant in an American court should not be dismissed

solely because of an alleged defect in the judicial or diplomatic processes leading to that

defendant's extradition.").

      In sum, just as in the *Umeh* case, which involved allegations of severe misconduct of a

nature far removed from the facts alleged here, there is no basis for a Court to order an

evidentiary hearing.  The authorities in this area are clear, and dismissal of the indictment is

simply not a result permitted under controlling authority, even accepting the facts as Blanchard

asserts them to be true.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Dated at Burlington, in the District of Vermont, this 1st day of April, 2011.

Respectfully submitted,

UNITED STATES OF AMERICA

By:     */s/ Tristram J. Coffin*
        TRISTRAM J. COFFIN
        United States Attorney
        P.O. Box 570
        Burlington VT 05402-0570
        (802) 951-6725
        Tristram.Coffin@usdoj.gov

12