```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT

United States of America        :
                                :
     v.                         :      Case No. 02-CR-91-5
                                :
Gerard Blanchard                :
                                :
                                :
```

**OPINION and ORDER Re: Defendant's Motion to Dismiss**

The Defendant is accused of conspiring to smuggle marijuana into the United States from Canada and laundering money in connection therewith.  He has moved to dismiss the charges, alleging "egregious violation[s] of due process . . . and international law" based on what he characterizes as an unlawful "abduction," allegedly committed by Mexican authorities at the behest of the United States government, and his involuntary transport onto U.S. soil.  For the reasons stated below, the motion to dismiss is **denied**.

Factual Background

A federal grand jury filed an indictment on February 6th, 2003, charging the defendant with conspiring to distribute marijuana, in violation of 21 U.S.C. § 846, and conspiring to launder money in violation of 18 U.S.C. § 371.  Indictment, ECF No. 35.  Canadian officials refused to extradite Blanchard "for

reasons that are unclear," Mot. for Detention, ECF No. 147. According to the Defendant's motion to dismiss, he served thirty months in Canadian federal prison and paid a fine of C$75,000, on a charge he described as "gangsterism" based upon the conduct underlying the federal indictment. Mot. to Dismiss 3, ECF No. 154.

On December 12, 2010, Blanchard was traveling to Mexico, ostensibly in connection with his work as a lumber purchasing agent, when he was denied entry into that country. He states that Mexican authorities sequestered him before he entered customs and told him that "the Americans wanted him." Mot. to Dismiss 3, ECF No. 154. On December 15, 2010, he was placed on a commercial flight, "under armed Mexican guard," to Canada with a scheduled stopover in Los Angeles. Blanchard was arrested by U.S. Marshals upon arriving in Los Angeles. *Id.* No U.S. agents were present in Mexico, and no physical mistreatment is alleged to have been committed, by Mexican or American agents, other than his being required to sleep on the floor for two nights.[1] He also claims he could not contact anyone during his detention, including the Canadian consulate.

---

[1] The United States communicated with the Mexican government, providing information, a photograph and arrest warrant, through a legal attaché in Mexico City who handles a number of such cases daily.

2

The Government corroborates much of this information, stating that on December 12, 2010, U.S. Customs and Border Protection informed Mexican officials of Blanchard's flight itinerary and of the charges pending against him, which led to his exclusion from Mexico.  Resp. in Opp. To Mot. to Dismiss 3, ECF No. 157.  This information-sharing is "standard procedure" between the U.S. and Mexican governments, and the Mexican government decided to exclude Blanchard.  When a person is denied entry into Mexico, they are "typically . . . boarded on flights to return to their home country."  *Id.*  In Blanchard's case, the flight was not direct to Canada, and upon making the scheduled stop in Los Angeles, Deputy Marshals and ICE arrested Blanchard, having been notified of his arrival by Mexican officials.

## Discussion

The Defendant maintains his detention and transfer to the United States constituted an "egregious violation of due process."  He describes his ordeal as an "abduction" or "kidnapping," and seeks a court order dismissing the indictment.

The Supreme Court rejected dismissal of an indictment as a remedy for the forcible detention in Mexico and transfer to the United States of a defendant by government agents in *United States v. Alvarez-Machain*, 504 U.S. 655 (1992).  In *Machain*, a Mexican national was forcibly arrested and transported to the

3

United States from Mexico at the direction of the DEA. The Court relied upon the longstanding doctrine set out in *Ker v. Illinois*, 119 U.S. 436 (1886) in which the Court refused to dismiss charges against a defendant who was forcibly removed from Peru. *See also Frisbie v. Collins*, 342 U.S. 519 (1952) ("the power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a 'forcible abduction'").

The Defendant argues the Second Circuit in *United States v. Toscanino*, 500 F.2d 267 (2d. Cir. 1974), created exceptions to the *Ker-Frisbie* doctrine, particularly when torture is inflicted upon a defendant that is "shocking to the conscience." He argues his case falls within that exception. In *Toscanino*, the defendant was arrested in Uruguay and transported to the United States. Prior to leaving Uruguay, he was subjected to numerous days of torture, during which he was knocked out with a blow from a gun, tied up while blindfolded and subjected to incessant torture and interrogation over a seventeen day period. The Second Circuit found there may be cases in which the *Ker-Frisbie* doctrine does not apply, particularly in those cases in which government conduct was so "outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 273. Essentially, the court used the due process standard laid out in

4

*Rochin v. California*, 342 U.S. 165 (1952), to assess whether the court could exercise jurisdiction over abducted and tortured defendants.[2]  The case was then remanded to the district court to hold an evidentiary hearing to determine if the conduct was sufficiently outrageous to warrant dismissal.

Soon after *Toscanino* was decided, its holding was modified in *United States ex rel Lujan v. Gengler*, 510 F.2d 62 (2d. Cir. 1975) in which the defendant was forcibly abducted to face charges in the United States but without torture or brutal treatment.  The Second Circuit found no due process violation based upon the abduction alone, thereby limited the *Toscanino* holding to cases in which torture was inflicted.

Recently Judge Rakoff of the Southern District of New York suggested *Toscanino* is no longer good law.  In *United States v. Umeh*, No. 09 Cr. 524, 2011 WL 9397 (S.D.N.Y. Jan. 3, 2011), Konstantin Yaroshenko, a Russian citizen, alleged abduction from a hotel in Liberia, torture, and removal to U.S. jurisdiction at the hands of the DEA, similar to *Toscanino*.  The district court stated "if *Toscanino* were still good law, this Court might be obliged to grant Yaroshenko's request for an evidentiary hearing . . . But it is reasonably clear that *Toscanino* is no longer

---

[2]  The standard, in *Rochin*, is that conduct that "shocks the conscience" offends due process, and cannot be sustained. *Rochin v. California*, 342 U.S. 165, 174 (1952) (holding that search via forced vomiting violates due process).

5

good law." *Id.* This conclusion was based upon *Alvarez-Machain* and *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039-1040 (1984), where the Supreme Court stated that "the 'body' or identity of a defendant . . . is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *See also United States v. Crews*, 445 U.S. 463 (1980); *Gerstein v. Pugh*, 420 U.S. 103 (1975). The Southern District, in *Umeh*, surveyed other circuits[3], and concluded that "the fact that . . . the pillars on which it rests have been removed suggests that all that remains [of *Toscanino*] is a rhetorical facade wholly lacking in legal foundation." *Umeh*, 2011 WL 9397 at 4.

Defendant's due process argument fails for a number of reasons. First, there has been no showing that the extradition treaties have been violated in any way. The Supreme Court in *Alvarez-Machain* found even a forcible abduction from Mexico did not violate the extradition treaties of that country, and there is nothing in the Canadian extradition treaty which prohibited Mexico from delivering the Defendant to Los Angeles under these facts.

---

[3] *See United States v. Best*, 304 F.3d 308 (3d. Cir. 2002); *United States v. Mitchell*, 957 F.2d 465 (7th Cir. 1992); *Matta-Ballesteros v. Henman*, 896 F.2d 255 (7th Cir. 1990); *United States v. Darby,* 744 F.2d 1508 (11th Cir. 1984).

6

Furthermore, *Toscanino* may no longer be good law.  The Supreme Court in *Alvarez-Machain* clearly reasserted the viability of the *Ker-Frisbie* doctrine, holding in significant part that how an accused is taken to the courthouse to face criminal charges is not a due process issue.  To that extent this Court agrees with the observations of Judge Rakoff in *Umeh* that *Toscanino* has little relevance.

Finally, even if it is still good law, *Toscanino* has been severely restricted in its application to cases involving abductions with conduct that is shocking to the conscience, that is, torture. *Alvarez-Machain* has reaffirmed the viability of the *Ker-Frisbie* doctrine.  In this case there is absolutely no evidence of torture or brutal mistreatment.  More importantly, there is no evidence of involvement of government agents other than to notify Mexico of the Defendant's travel plans and to arrange for his arrest.  In fact, there is no evidence that government agents were integrally involved in a forcible abduction.  Even if *Toscanino* was still good law, this case is sufficiently distinguishable on the facts so that its holding has no relevance.

For all of the above reasons, Defendant's motion to dismiss is without merit and is DENIED.

Dated at Burlington, Vermont this 4th day of August, 2011.


                                        /s/ William K. Sessions III
                                        William K. Sessions III
                                        District Judge